**IN THE U.S. DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **Jose Armando Andrade Romero,** *et al.* | * | |
| **Plaintiffs** | * | |
| **v.** | * | **Case No.:  18-cv-00179-EGS** |
| **RBS Construction Corp., et al.** | * | |
| **Defendants** | * | |
| * * * * * * * | | |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

Defendants, RBS Construction Corp., Mr. Albertino Silveira and Mrs. Ellen Lima ("Defendants"), oppose Plaintiffs' Motion for Protective Order (the "Motion") and respectfully request the Court deny Plaintiffs' Motion.

**INTRODUCTION**

Plaintiffs' filed a Motion for Protective Order on August 27, 2019 to inhibit Defendants from seeking information related to Plaintiffs' immigration status.  Plaintiffs' contend that "Defendants are pursuing this line of inquiry solely to intimidate and harass the Plaintiffs into abandoning this lawsuit." (ECF Doc. 33, pg.1).  Plaintiffs insist that "Defendants have failed to articulate even a colorable basis for why they need information about immigration status or how it is even relevant." *Id.*  Plaintiffs also further assert that they engaged in good faith efforts to resolve this discovery dispute.

As an initial matter, Defendants reject all allegations made by Plaintiffs in their Motion. Plaintiffs' "good faith" efforts to resolve this discovery dispute involve a single email to Defendants' counsel, whereby Defendants' counsel was assumed to be not willing to confer if he

did not respond within two days.

As to the substance, Defendants submit that Plaintiffs' immigration status is relevant to the issue of their truthfulness, and moreover, Plaintiffs failed to meet their burden for articulating specific facts justifying the need for a protective order. Therefore, Plaintiffs' immigration status should be discoverable, and their Motion for Protective Order denied.

## LEGAL STANDARD

### I.    Conferring in Good Faith

Pursuant to Fed. R. Civ. P. 37, parties are required to cooperate with each other and make good faith efforts to resolve discovery disputes. A good faith effort typically requires more than just the most minimal of efforts. "[S]ending a single email, without further discussion, is insufficient to demonstrate good faith communications..." *Sartori v. Susan C. Little & Associates, P.A.*, 2013 WL 11740238 at *2 (D.N.M. Mar. 8, 2013) (*citing Stranger v. Checker Auto Parts*, 2006 WL 1304948 at *11 (D.N.M. Mar. 24, 2006)); *see also Kemp v. Harris*, 263 F.R.D. 293, 297 (D. Md. 2009) (*citing Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357-58 (D. Md. 2008)) ("Here, although Defense counsel filed a Certificate of Good Faith... the only effort he indicated was the email he sent on July 31, 2009... Indeed, Defense counsel moved for sanctions on the next business day after he sent the email. Therefore, notwithstanding his certification, Defense counsel did not make a good faith effort.").

Moreover, "an <u>attempt</u> to confer is a 'far cry from conferring in good faith.' " *Sartori*, 2013 WL 11740238 at *1 (D.N.M. Mar. 8, 2013) (*quoting Madison v. Harford County, Md.*, 268 F.R.D. 563, 564 (D. Md. 2010). The obligations to confer means "more than simply making a demand for compliance," and the parties should " '[] hold a conference, compare views, [and] consult together." *Sartori*, 2013 WL 11740238 at *1 (*citing Hoelzel v. First Select Corp*., 214 F.R.D. 634,

635-36 (D. Colo. 2003)).

## II.    Relevance and Protective Orders

"The Federal Rules of Civil Procedure allow for 'discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.' Fed. R. Civ. P. 26(b)(2)."  *Garcia Ramirez v. U.S. Immigration and Customs Enforcement*, 331 F.R.D. 194, 196 (D.D.C. 2019).

Therefore, if a line of inquiry is relevant, but a party wishes to limit that line of inquiry, a party may seek a protective order, and in doing so  "bears the burden of showing that 'disclosure would cause a clearly defined and serious injury.' "  *Id.* (*quoting Campbell v. U.S. Dep't of Justice*, 231 F. Supp. 2d 1, 7 (D.D.C. 2002)).   In other words, "[t]o show good cause for entry of a protective order, 'the movant must articulate specific facts to support its request and cannot rely on speculative or conclusory statements....' "  *Friends Of The Earth v. U.S. Dept. of Interior*, 236 F.R.D. 39, 41 (D.D.C. 2006) (*quoting Low v. Whitman*, 207 F.R.D. 9, 10-11 (D.D.C. 2002)).

## ARGUMENT

### I.    Plaintiffs did not engage in good faith attempts to resolve this discovery dispute.

Contrary to Plaintiffs' assertions that they attempted to resolve this discovery dispute in good faith, Plaintiffs' sent a single email and provided Defendants with two and a half business days to respond before unilaterally determining they had done enough.  Indeed, Plaintiffs' August 16, 2019 email, which was sent mid-afternoon on a Friday, states, "[i]f we do not hear from you by the close of business on Tuesday, August 20, 2019, we will assume you do not wish to confer on this matter and we will proceed with filing the motion for a protective order."  (Exh. 1).  And although Plaintiffs did not actually file the Motion until August 27, 2019, Plaintiffs never sent another follow up email or attempted to call Defendants' counsel, who during this time, did not

immediately respond because of the intervening weekend and the need to further consider the complexities of this issue while responding to the press of other cases.

Plaintiffs' minimal efforts do not remotely constitute "good faith."  As various Courts have held, a party sending a single email and providing only one or two days to respond is inadequate. *See Sartori*, 2013 WL 11740238 at *2; *see also Kemp*, 263 F.R.D. at 297.  Plaintiffs sent but a single email, provided only two and a half business days to respond, and failed to provide Defendants the courtesy of follow up communications or a sufficient amount of time to reply to the original email.  No real attempt was made by Plaintiffs to actually confer with Defendants on this issue.

Plaintiffs' Motion should thus be denied solely on the basis that no good faith effort was actually made by them to resolve this issue.  *See Sartori*, 2013 WL 11740238 at *1 ("The Court does not address the merits of [Plaintiff's] motion because the Court determines that [Plaintiff] failed to confer with Defendant in a good-faith attempt to resolve the motion prior to filing it. Thus, the Court denies the motion.").

## II.      Plaintiffs' immigration status is relevant to the issue of truthfulness under Fed. R. Evid. 608(b).

Plaintiffs overlook[1] that their immigration status is relevant to their character of truthfulness or untruthfulness under Fed. R. Evid. 608(b).  *See e.g. Bonilla v. Jaronczyk*, 354 Fed. Appx. 579, 583 (2d Cir. 2018) ("defendants were permitted to inquire into specific instances of conduct bearing on Bonilla's 'character for truthfulness or untruthfulness.'  Fed.R.Evid. 608(b)(1). Questions regarding Bonilla's alleged use of false papers to reenter the United States illegally

---

[1]      Plaintiffs' attempt to divine Defendants' reasons for inquiring into Plaintiffs' immigration status leaves much to be desired.  Plaintiffs appear to believe that two sentences from Defendant Silveira's answer to interrogatories encompass all the reasons for which Defendants seek information on Plaintiffs' immigration status.  *See* (ECF Doc. 33, pg. 3).  This is incorrect.

clearly satisfied this standard." ).

For example, Plaintiffs' submission of falsified tax documents would be highly probative of their honesty and credibility, and this is one of the reasons Defendants also sought Plaintiffs' tax documents (which they have also refused to produce) in requests for production.  (Exh. 2). Similarly, if Plaintiffs are illegally in the United States, the manner in which they are illegally present in the United States has bearing on their character of truthfulness.  Whereas overstaying a visa may be weak evidence of dishonesty, entering the country under false documents or re-entry after deportation would by highly probative of truthfulness.  *See Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 552 (E.D.N.Y. 2016) ("Courts in the Second Circuit have consistently held that 'a witness' use of false names or identities is the proper subject of cross-examination under Rule 608.' ").  The credibility of Plaintiffs and their willingness to falsify documents is particularly relevant in this case because there are serious credibility concerns regarding wage and hour recollections that were allegedly generated by Plaintiffs.  Only by allowing Defendants to at least ask questions of the Plaintiffs can the Court evaluate a full record and serve its gatekeeper role with respect to what evidence should be admitted or denied at Trial.

Although Plaintiffs cite to a number of cases that state immigration status is irrelevant in FLSA wage and hour cases, none of these cases are controlling within this District, and perhaps more importantly, none of these cases meaningfully address the wide spectrum of potential immigration violations that an individual may commit, some of which (like reentry following a deportation order, see 8 U.S.C. § 1326) are felonies and are highly probative and should be admissible under Fed. R. Evid. 608(b).  *See* (ECF Doc. 33, pg. 2).

Moreover, the one case from this District that Plaintiffs cite, actually permits discovery into immigration status, as it states:  "Leiba may be right that the probative value of such evidence

is outweighed by the possibility of unfair prejudice under Rule 403, though the Court does not opine on that issue. That is the standard for admissibility at trial, not for the scope of permissible discovery.  What decides this motion is that the proposed discovery is 'relevant to any party's claim or defense,' and 'appears reasonably calculated to lead to the discovery of admissible evidence.' Fed. R. Civ. P. 26(b)(1). Whether such evidence is actually admissible is a question for another day." *See Caragena v. Centerpointe Nine, Inc.*, 303 F.R.D, 109, 114 (D.D.C. 2014).   Here, the Court can only rule on the admissibility of evidence based upon some record.  The permissibility of immigration-status discovery, and by extension, presentation of impeachment at Trial, cannot be determined in absolute terms or in the abstract.  There are many different factual circumstances involved in illegal immigration, ranging from visa overstay to reentry after deportation.   The specific facts need to be developed before a ruling can be made with respect to admissibility.

The Court should not accept Plaintiffs' invitation to rule that any questioning as to immigration status, in a "he-said-she-said" wage/hour dispute such as this, is prohibited. Defendants contend that Plaintiffs' immigration status is relevant to their character of truthfulness under Fed. R. Evid. 608(b).  As such, the sought-after information is well within the scope of permissible discovery, and any concerns as to its prejudicial effect should be determined prior to trial rather than at this stage.  Moreover, this Court has already seen reason to permit discovery into immigration status under specific factual circumstances also related to the issue of credibility. Defendants therefore also contend that this District should adopt the Second Circuit's more nuanced approach in regard to the relevance of immigration status in FLSA wage and hour cases, especially when specific instances of conduct probative of truthfulness are at issue. *See* Fed. R.

Evid. 608(b).[2]

### III. Plaintiffs' fail to articulate specific facts or harms that support the need for a protective order.

Aside from failing to show that Plaintiffs' immigration status is irrelevant to this case, Plaintiffs fail to meet their burden of articulating specific facts or harms that would justify the imposition of a protective order by the Court. Instead, Plaintiffs simply cite generally as to why immigration status may have been prohibited in other Title VII and FLSA cases. (ECF Doc. 33, pg. 2) ("The reason that discovery of immigration status is **generally** prohibited in Title VII and FLSA cases is because of the chilling effect it would have...") (emphasis added).

But the standard for a protective order is not that the seeking party need only describe "general" speculative and conclusory harms; rather, it requires the moving party to "articulate specific facts." *Friends Of The Earth*, 236 F.R.D. at 41. Plaintiffs have completely failed to do this. Nowhere in Plaintiffs Motion do they describe specifically why inquiries into their immigration status may be harmful or embarrassing. It is not the Court's province to assume the *in terrorem* effect of inquiry regarding immigration; in order to find some in terrorem effect, the Court would need to presume that the Plaintiffs do not have legal immigration status. However, that is a fact that has not been established.

---

[2] While immigration status is discoverable evidence per Fed. R. Evid. 608(b), immigration status may also be substantively relevant. For example, neither this Court nor the U.S. Court of Appeals for the D.C. Circuit has directly ruled on whether unlawful immigration status could be substantively relevant to the Court's determination of whether unauthorized workers are entitled to liquidated damages under the FLSA. For example, the issue of liquidated damage payments to unauthorized workers is not "free from doubt." *See Lucas v. Jerusalem Café, LLC*, 721 F.3d 927 940 (8th Cir. 2013) (Loken, J., concurring) ("appellants have not challenged on appeal the award of liquidated damages under the Fair Labor Standards Act. We therefore do not consider that issue. But in my view, the question whether the Supreme Court's decision in *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 [] (2002), may require a modified analysis of the liquidated damage issue, at least in some cases, is not free from doubt.").

Indeed, not once do Plaintiffs describe *any* specific fact or reason as to why the drastic remedy of a protective order banning all inquiries is necessary.  Plaintiffs have not even attested that their immigration status is a sensitive topic to them specifically – they have only contended that it may, generally and broadly speaking, be a sensitive topic in FLSA and Title VII cases.

If the Plaintiffs lack lawful immigration status, then the Plaintiffs may ask the Court for a confidentiality order regarding disclosure as to this issue.  Such a remedy would be narrowly tailored and not impede the Defendants' legitimate discovery needs.  Plaintiffs have not even attested that their immigration status is a sensitive topic to them specifically – they have only contended that it may, generally and broadly speaking, be a sensitive topic in FLSA and Title VII cases.

## CONCLUSION

WHEREFORE, because Plaintiffs failed to confer with Defendants in good faith on this discovery dispute, because the sought-after information is relevant to the issue of truthfulness under Fed. R. Evid. 608(b), and because Plaintiffs failed to articulate specific facts about the harm or damage the sought-after information may cause, Defendants request that the Court deny Plaintiffs' Motion for Protective Order.

Respectfully submitted,

*/s/ Howard B. Hoffman*
Howard B. Hoffman, Esq. (#977135)
Hoffman Employment Law
600 Jefferson Plaza, Suite 204
Rockville, MD 20852
(301) 251-3752
(301) 251-3753 (fax)
hhoffman@hoholaw.com

*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of September, 2019, a copy of the foregoing Defendants' Opposition to Plaintiffs' Motion for Protective Order, along with all Exhibits and other attachments, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Columbia, and is available for viewing and downloading from the ECF system.

*/s/ Howard B. Hoffman*
Howard B. Hoffman