**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOSE ARMANDO ANDRADE ROMERO, *et al.*<br><br>         Plaintiffs,<br><br>v.<br><br>RBS CONSTRUCTION CORP., *et al.*,<br><br>         Defendants. | Civ. Action No. 18-00179 (EGS) |

<u>**MEMORANDUM OPINION**</u>

**I.   Introduction**

Plaintiffs Jose Armando Andrade Romero and Victorino Marroquin (collectively "Plaintiffs") bring this case against Defendants RBS Construction Corp., RBS Group Inc., RBS Group Investments LLC, Albertino Silveira, and Ellen Lima (collectively "Defendants"), alleging that Defendants failed to properly compensate them for hours worked and for overtime earned. *See generally* Compl., ECF No. 1. The case arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201; the District of Columbia Payment and Collection of Wages Law ("DCPCWL"), D.C. Code § 32-1301; and the District of Columbia Minimum Wage Revision Act ("DCMWRA"), D.C. Code § 32-1001. Defendants have filed a motion seeking summary judgment, *see* Defs.' Mem. of P. & A. in Supp. of Mot. for Summ. J. ("Defs.'

1

MSJ"), ECF No. 38; in response to which Plaintiffs have filed a cross-motion for partial summary Judgment, *see* Pls.' Cross-Mot. for Partial Summ. J. ("Pls.' XMSJ"), ECF No. 42. In addition, Defendants move to strike exhibits filed by Plaintiffs in their reply in support of their cross-motion. *See* Defs.' Mot. to Strike, ECF No. 48.

Upon consideration of the motions, responses, and the replies thereto, the applicable law and regulations, the entire record and the materials cited therein, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' Motion for Summary Judgment, ECF No. 38; **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 42; and **GRANTS IN PART** and **DENIES IN PART** the Motion to Strike, ECF No. 48.

## II.  Factual and Procedural Background

This case arises out of Defendants' alleged failure to properly compensate Plaintiffs for hours worked and for overtime earned under the FLSA, DCPCWL, and DCMWRA. *See generally* Compl. ECF No. 1. Defendant RBS provides remodeling and general construction services to residential homeowners in Maryland and the District of Columbia ("D.C."). *See id.* ¶ 4; Defs.' Counter Stmt. Of Material Facts ("DSMF"), ECF No. 44-1 ¶ 10. Plaintiffs allege that Defendants Mr. Silveira and Ms. Lima are Officers, Directors, and owners or RBS, and use RBS to perform construction and remodeling services at properties in D.C. and

Maryland which they purchase, renovate and resell. *See* Compl., ECF No. 1 ¶¶ 4-5; DSMF, ECF No. 44-1 ¶¶ 6-12. Defendants admit that Ms. Lima is listed as an owner and director of RBS Group and RBS Construction Corp., and that she is officially the Vice President of RBS Group, *see id.* ¶¶ 1, 3, 11; however, they state that Ms. Lima, the spouse of Defendant Silveira, is a full-time real estate agent, and is not involved in Mr. Silveira's business, "except for occasionally writing a check for Defendant Silveira or receiving work hours from workers." Defs.' MSJ, ECF No. 38 at 7.[1]

Plaintiffs allege that RBS, which in incorporated in Maryland, meets the definition of "Enterprise Engaged in Commerce" under 29 U.S.C. § 203 (s)(1), because: (1) it either has employees engaged in commerce or the production of goods for commerce or it has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce; and (2) it has a gross volume of sales made or business done of not less than $500,000.00 (exclusive or excise taxes at the retail level that are separately stated). Compl., ECF No. 1 ¶ 4. Defendants counter that the gross annual

---

[1] When citing to electronic filings throughout this Memorandum Opinion, the Court generally cites to the ECF header page number, not the original page number of the filed document. The exception is deposition testimony, for which the citations are to the page of the deposition transcript.

revenue of RBS Group Corporation was $204,736.02 in 2016 and $252,775.05 in 2017, excepting funds received from returned checks and the sale of Defendants' home. *See* Exhibit 1, Silveira Decl., ECF No. 38-2 ¶ 5. Defendants state that they have never had more than $500,000 per year in gross sales. *Id.* ¶ 6.

Plaintiff Andrade, a resident of D.C., and Plaintiff Marroquin, a resident of Maryland, were both employed by Defendants as laborers/carpenters. Compl., ECF No. 1 ¶¶ 7-8; DSMF, ECF No. 44-1 ¶ 44. Plaintiffs allege they performed home remodeling services for the Defendants including drywall and simple carpentry, pouring concrete, and removing debris and old drywall from properties. *Id.* Plaintiffs state that Mr. Andrade was employed full-time from approximately June 2016 to January 2017, and part-time until December 2017, *see* DSMF, ECF No. 44-1 ¶ 14; while Mr. Marroquin was employed from approximately July 2016 to October 2016, *id.* ¶ 12. Defendants, however, contend that as per Mr. Andrade's own Answers to Interrogatories, he worked from June 2016 to about January 1, 2017, and then between October 2017 and December 2017. *See* DSMF, ECF No. 44-1 ¶ 14. As to Mr. Marroquin, Defendants assert that he testified he did not recall the exact date he began working between July 20, 2016 and

July 27, 2016. *See* Transcript of Victorino C. Marroquin ("Marroquin Dep."), ECF No. 44-3 at 47-48.[2]

Mr. Andrade states he was paid an hourly rate of $13 for his first two months of work, and then $14 per hour. *See* Exhibit H, Pl. Jose Armando Andrade's Answers and Amended Objections to Defendant RBS Construction Corp.'s First Set of Interrogatories ("Andrade Interrogatories"), ECF No. 42-9 at 15-16. However, Defendant Silveira testified that Plaintiff Andrade started at $12 per hour and then received a raise to $13 per hour. Deposition of Albertino Assis Silveira ("Silveira Dep."), ECF No. 44-6 at 70; 187. Mr. Marroquin's wage is similarly disputed, with Plaintiffs arguing he was paid $14 per hour, *see* DSMF, ECF No. 44-1 ¶ 106; and Defendants countering that he was paid $13 per hour. *See* Defs.' Opp'n, ECF No. 44 at 28.

Plaintiffs allege that they spent more than half their time working for the Defendants at sites located in D.C., and consistently worked more than forty hours per week. Compl., ECF No. 1 ¶¶ 7-8. They state that they worked between five and six days per week, and twelve to fifteen hours per day, *see* DSMF, ECF No. 44-1 ¶ 108; although Defendants dispute the evidence Plaintiffs provide, *see id.* Plaintiffs also assert that Defendants would inform them each day about the location of the

---

[2] This argument is splitting hairs, since July 24, 2016, the date used by Plaintiffs, is midway between July 20 and July 27.

day's job site, provide them with a schedule of hours, and instruct them on their specific duties. Compl., ECF No. 1 ¶ 10. They state that Defendants provided them with the construction materials needed or instructed them to pick up the materials and transport them to the work site. *Id.* ¶ 11; *see also* DSMF, ECF No. 44-1 ¶ 69. They add that Defendants would inspect the job sites daily or ask Plaintiffs to send photos of the completed work. *See* Compl., ECF No. 1 ¶ 11. They also state that Defendants did not keep track of the hours that Plaintiffs worked each day, which Defendants admit. *Id.* ¶ 12; DSMF, ECF No. 1 ¶ 48. The Defendants, however, refute Ms. Lima's involvement in managing or overseeing any of the work. *See* Defs.' MSJ, ECF No. 38 at 7.

Plaintiffs allege they were not paid on any fixed schedule, nor paid in relation to the hourly work wage they were promised. Compl., ECF No. 1 ¶ 13. Instead, Plaintiffs state they were paid sporadically in cash and usually after having complained about not being compensated for hours worked. *Id.* Defendants do not dispute the cash payments. *See* Defs.' MSJ, ECF No. 38 at 8; DSMF, ECF No. 41-1 ¶¶ 56, 73. Plaintiffs allege that, based on records Mr. Andrade kept in his notebook, he was paid approximately $8,300 during the time period which is the subject of this Complaint. *See* Compl., ECF No. 1 ¶¶ 14-15; DSMF, ECF No. 41-1 ¶ 59. Plaintiffs claim that Mr. Marroquin was paid

approximately $2,500, although they provide no written records in support. *See* Compl., ECF No. 1 ¶¶ 14-15; DSMF, ECF No. 41-1 ¶ 60. Defendants challenge the amount Plaintiffs state they were paid, arguing that Plaintiffs do not present a valid basis for their calculations. *See* DSMF, ECF No. 44-1 ¶ 59-60, 93. However, defendants do not have any records of their own as to the amounts paid. *See generally id.*

Plaintiffs allege that Defendants: (1) failed to compensate them for all the regular hours they worked; (2) failed to pay them at the promised rate for all hours worked; (3) failed to pay any compensation at all for the hours worked in excess of 40 hours each work week; and (4) failed to comply with the statutory record-keeping and notice requirements of the DCPCLW and the DCMWRA. Compl., ECF No. 1 ¶ 8. Specifically, they allege that Plaintiff Andrade worked approximately 550 hours of straight time and 438 hours of overtime for which he was never paid, and Plaintiff Marroquin worked approximately 340 hours of regular hours and 283 hours of overtime for which he was never paid. *Id.* ¶ 16-17; *see also* Exhibit T, Wage Calculation Victorino Marroquin ("Marroquin Wage Calculation"), ECF No. 42-21; Exhibit U, Jose Andrade Romero Wage Calculation ("Romero Wage Calculation"), ECF No. 42-22.[3] Defendants, however, argue

---

[3] The documents provided by Plaintiffs include their respective handwritten records of the hours and days worked for the

that Plaintiffs can only guess as to what their damages are and what they were paid. *See* Defs.' MSJ, ECF No. 38 at 8-11.

Plaintiffs brought suit in this Court on January 26, 2018. Defendants subsequently filed a motion for summary judgment, *see* Defs.' MSJ, ECF No. 38; in response to which Plaintiffs filed a cross-motion for partial summary judgment, *see* Pls.' XMSJ, ECF No. 42. Plaintiff also filed a brief opposing the Defendants' motion. *See* Pls.' Mem. of P. & A. in Opp'n to Defs.' Mot. for Partial Summ. J. and in Supp. of Pls.' Cross-Mot. for Partial Summ. J. ("Pls.' Opp'n"), ECF No. 43.[4] Defendants then filed a consolidated opposition and reply. *See* Defs.' Consolidated Reply to Pls.' Opp'n to Defs.' Mot. for Summ. J. and Defs.' Opp'n to Pls.' Cross-Mot. for Partial Summ. J. ("Defs.' Opp'n"), ECF No. 44. After Plaintiffs filed their own reply, *see* Pls.' Reply in Supp. of Cross-Mot. for Partial Summ. J. ("Pls.' Reply"), ECF No. 46; Defendants motioned to strike the exhibits submitted in Plaintiff's reply, *see* Defs.' Mot. to Strike, ECF No. 48. Plaintiffs opposed, *see* Pls.' Opp'n to Mot. to Strike ("Pls.'

---

Defendants. *See* Marroquin Wage Calculation, ECF No. 42-21 at 6-11; Andrade Wage Calculation, ECF No. 42-22 at 11-20. Mr. Romero also recorded the payments he received. *See* Exhibit U, ECF No. 42-22 at 20. Mr. Marroquin, however, provides no basis for the hours for which he was allegedly paid, other than his testimony. *See* DSMF, ECF No. 44-1 ¶ 60.

[4] This brief is identical to the Plaintiffs' cross motion for summary judgment, ECF No. 42.

Opp'n to MTS"), ECF No. 50; and Defendants replied, *see* Defs.'
Reply to Pls.' Opp'n to Defs.' Mot. to Strike ("Defs.' Reply to
MTS"), ECF No. 51. The motions are ripe and ready for
adjudication.

### III. Standard of Review

#### A. Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary
judgment motions must be granted if "there is no genuine dispute
as to any material fact and the movant is entitled to judgment
as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party
bears the initial burden "of informing the district court of the
basis for its motion, and identifying those portions of 'the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any,' which
it believes demonstrate the absence of a genuine issue of
material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323
(1986); *see also* Fed. R. Civ. P. 56(c)(1). This burden "may be
discharged by 'showing' . . . that there is an absence of
evidence to support the nonmoving party's case." *Celotex*, 477
U.S. at 325.

In evaluating a summary judgment motion, "[t]he evidence of
the non-movant is to be believed, and all justifiable inferences
are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255

(quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Summary judgment turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party"–and thus a "genuine" dispute over a material fact exists–then summary judgment is not available. *Id.* at 248.

For purposes of summary judgment, materiality is determined by the substantive law of the action. *Id.* Accordingly, the substantive law identifies "which facts are critical and which facts are irrelevant," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Similarly, the applicable substantive evidentiary standards of the action guide "whether a given factual dispute requires submission to a jury." *Id.* at 255. The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

### 1. Determining Employer Status Under the FLSA

Courts in this District use a four-part test to determine whether an individual is an employer under the FLSA: does the putative employer "1) have hiring and firing authority, 2)

supervise and schedule employee work hours or conditions of
employment, 3) determine the rate and method of payment, and 4)
maintain employment records?" *Saint-Jean v. District of Columbia
Public Schools Div. of Transp.*, 815 F. Supp. 2d 1, 4 (D.D.C.
2011) (citing *Morrison v. Int'l Programs Consortium, Inc.*, 253
F.3d 5, 11 (D.C. Cir. 2001)). "No one factor standing alone is
dispositive and courts are directed to look at the totality of
the circumstances and consider any relevant evidence." *Morrison*,
253 F.3d at 11. Corporate officers and owners are individually
liable under the FLSA (and therefore D.C. wage laws) when they
engage in a certain level of operational control. *See Wilson v.
Hunam Inn, Inc.*, 126 F. Supp. 3d 1, 6 (D.D.C. 2015) ("Corporate
officers are liable as employers under the FLSA as long as the
officer acts, or has the power to act, on behalf of the
corporation vis-à-vis its employees."). "To determine whether a
corporate officer has operational control, the [c]ourt looks at
the factors [of the economic reality test] plus the ownership
interest of the corporate officer." *Orellana v. NBSB Inc.*, 332
F. Supp. 3d 252, 263 (D.D.C. 2018). "A Defendant's ownership
interest in an employer corporation, while not dispositive of
employer status under FLSA, certainly raises a plausible
inference that the individual possessed the requisite
"operational control" over the covered entity." *Wilson*, 126 F.
Supp. 3d at 7-8. Courts in other circuits have emphasized that

financial control over a corporation is a significant factor in determining whether an individual meets the statutory definition of an employer. *See, e.g.*, *Donovan v. Grim Hotel,* 747 F.2d 966, 972 (5th Cir. 1984)(imposing liability on a majority shareholder who "held [corporations'] purse strings and guided their policies"); *Dole v. Elliott Travel,* 942 F.2d 962, 966 (6th Cir. 1991) (finding that the majority owner "controlled the purse strings"); *Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 48 (1st Cir. 2013)(internal citation and quotation marks omitted)("[T]he case law's emphasis on ownership and financial control is sensible because these factors suggest a strong degree of authority over the corporation's finances and, as a corollary, the ability to caus[e] the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits.").

### 2. Determining Coverage Under the FLSA

To claim relief under the FLSA, an employee must first establish that that his employment relationship is subject to coverage under the FLSA. *Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 49 (D.D.C. 2015). Coverage can be either: (1) enterprise coverage; or (2) individual coverage. *Tony & Susan Alamo Found.*, 471 U.S. at 295 n. 8 (1985). A given employee may have coverage under either or both theories. *Benton*, 121 F. Supp. 3d at 49. Plaintiffs bear the burden of

establishing FLSA coverage. *See D.A. Schulte, Inc., v. Gangi*,
328 U.S. 108, 120 (1946) ("The burden of proof that rests upon
employees to establish that they are engaged in the production
of goods for commerce must be met by evidence in the record.").

For individual coverage to apply under the FLSA, the
Plaintiffs must provide evidence that they were: (1) engaged in
commerce; or (2) engaged in the production of goods for
commerce. *Benton*, 210 F. Supp. 3d at 106 (citing 29 U.S.C. §
207(a)(1)).[5] A plaintiff may show they are "engaged in commerce"
by showing that they are employed in industries that "serve as
the actual instrumentalities and channels of interstate and
foreign commerce," such as the telephone, transportation, or
shipping industries. *Id.* Alternately, a plaintiff may show that
are employed in a type of business that "regularly utilize[s]
the channels of interstate and foreign commerce in the course of
their operations," such as the banking, insurance, or publishing
industries; or by showing that she directly participates in the
actual movement of people or goods in interstate commerce." *Id.*
(citing 29 C.F.R. § 776.10). "The fact that all of [an

_____

[5] Since Plaintiffs claim individual coverage under the first
prong, i.e., they allege that they were engaged in commerce,
that is where the Court directs its attention. *See* Pls.' XMSJ,
ECF No. 42 at 31.

employer's] business is not shown to have an interstate character is not important. The applicability of the [FLSA] is dependent on the character of the employees' work." *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 571-72 (1943) (citations omitted). "The test under [the FLSA], to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943). U.S. Department of Labor regulations address the issue of employees who travel across state lines for work as follows:

> If the employee transports material or equipment or other persons across State lines or within a particular State as a part of an interstate movement, it is clear of course, that he is engaging in commerce. And as a general rule, employees who are regularly engaged in traveling across State lines in the performance of their duties (as distinguished from merely going to and from their homes or lodgings in commuting to a work place) are engaged in commerce and covered by the Act. On the other hand, it is equally plain that an employee who, in isolated or sporadic instances, happens to cross a State line in the course of his employment, which is otherwise intrastate in character, is not, for that sole reason, covered by the Act.

29 C.F.R. § 776.12 (footnotes omitted).

### 3. Calculating Damages Under the FLSA

The employee has the burden of proving damages under FLSA. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds,* Portal-to-Portal Act of 1947. "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." *Id*. However, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," a burden-shifting scheme applies. *Id.* Under this scheme, an employee carries his burden to prove damages and makes out a *prima facie* case if: (a) "he proves that he has in fact performed work for which he was improperly compensated"; and (b) "he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id*. The burden then shifts to the employer to produce "evidence of the precise amount of work performed" or to negate "the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-688. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id*. at 688. A defendant employer is not entitled to summary judgment on the issue of damages because they challenge the sufficiency or reasonableness of a plaintiff's evidence; rather, such situations present a dispute of material

fact which require credibility determinations to resolve. *See Escamilla v. Nuyen*, 200 F. Supp. 3d 114, 123 (D.D.C. 2016) (denying summary judgment where defendants presented evidence to contest reasonableness of plaintiffs estimate of hours worked per week.); *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 53 (D.D.C. 2006) (holding that summary judgment is not the proper vehicle to challenge the reasonableness of the employee's evidence about hours worked, because such disputes require credibility determinations and are reserved for the trier of fact); *Zirintusa v. Whitaker*, 674 F. Supp. 2d 1, 6 (D.D.C. 2009) (denying summary judgment where plaintiff produced evidence of hours worked in the form of her affidavit testimony and a chart of her estimated hours worked); *Batres Guevara v. Ischia, Inc.*, 47 F. Supp. 3d 23, 27-28 (D.D.C. 2014) (denying summary judgment where plaintiffs offered three depositions in support of their overtime claim and defendant offered five affidavits against it).

### B. Motion to Strike

It is well-established that new issues, arguments, and evidence "may not be raised for the first time in a reply brief." *Rollins Envtl. Servs. V. EPA*, 937 F.2d 649, 652 n. 2 (D.C. Cir. 1991); *see also McBride v. Merrell Dow and Pharmaceuticals, Inc.*, 800 F.2d 1208, 1210 (D.C. Cir. 1986) ("We generally will not entertain arguments omitted from an

appellant's opening brief and raised initially in his reply brief."); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond.") (quoting *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)); *BMW of N. Am., LLC v. WIN.IT Am., Inc.*, No. CV178826PSGMRWX, 2019 WL 926326, at *7 (C.D. Cal. Jan. 25, 2019) (declining to consider certified translations of an agreement produced with a reply brief without giving the opposing party an opportunity to object or respond). If a court accepts a Reply containing new evidence and the opposing party has no opportunity to respond, that court cannot rely on the new material in deciding a motion for summary judgment. *See Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998) ("Having accepted the reply brief, the district court in fact had two permissible courses of action. It could either have permitted a surreply or, in granting summary judgment for the movant, it could have refrained from relying on any new material contained in the reply brief.").

IV. **Analysis**

Defendants make a number of arguments in their motion for summary judgment. First, they argue that Plaintiffs neither work for a covered enterprise nor are individually covered under the

17

FLSA. *See* Defs.' MSJ, ECF No. 38 at 13. Next, they argue that Ms. Lima is not an employer under the FLSA. *Id.* at 17. Third, they contend that Plaintiffs cannot establish their damages by a just and reasonable inference. *Id.* at 20. Finally, they argue that the Court should decline supplemental jurisdiction over any remaining DC law claims. *Id.* at 25.

In their cross-motion for summary judgment, Plaintiffs raise similar issues. First, they argue that Ms. Lima and Mr. Silveira are individually liable as Plaintiff's employers under the FLSA and DC's own wage laws. Pls.' XMSJ, ECF No. 42 at 10. Second, they argue that they have established their damages as a matter of just and reasonable inference and defendants have no evidence to dispute their inference. *Id.* at 23. Finally, they argue that even if no FLSA claim survives, the Court should exercise supplemental jurisdiction over the state law claims in the interest of fairness and judicial economy. *Id.* at 37. In their Motion to Strike, Defendants object to the affidavits submitted by the respective Plaintiffs in their cross-motion for summary judgment and their reply. *See generally* Defs.' MTS, ECF No. 48. Defendants seek to strike Plaintiffs' entire Reply to Defendants' Counter-Statement of Material Facts ("RSMF"), ECF No. 47; the Plaintiffs' respective affidavits, ECF No. 46-1; and the translator's declaration as to the affidavits, ECF No. 46-2. *See* Defs.' MTS, ECF NO. 48 at 6. Given the overlapping nature of

the arguments in Defendants' motion for summary judgment, and
Plaintiffs' cross-motion, the Court considers the arguments
together, by each issue raised. First, however, the Court
considers evidentiary challenges posed by the defendants,
including their motion to strike.

### A. Admissible Evidence

In their cross-motion for summary judgment, Plaintiffs file
affidavits for Mr. Andrade and Mr. Marroquin respectively, *see*
ECF Nos. 42-19, 42-20; which defendants oppose as inadmissible
hearsay. *See* Defs.' Opp'n, ECF No. 44 at 22. Defendants argue
that the declarations are unreliable because they are in
English, a language Plaintiffs do not speak, and lack an oath
from an interpreter as to the affidavits being translated for
Plaintiffs. *Id.* at 22-23. Defendants also argue that even if the
affidavits could be properly authenticated and translated, they
are inadmissible because they contradict prior sworn testimony.
*Id.* at 26. In response, Plaintiffs provide Spanish language
versions of the affidavits, and an affidavit from Ms. Aguilar,
an employee of Plaintiff's counsel who speaks Spanish and
affirms she read the affidavits to Plaintiffs. *See* Exhibit A,
ECF No. 46-1; Exhibit B, Affidavit of Maria Aguilar ("Aguilar
Affidavit"), ECF No. 46-2. Plaintiffs also assert that the
affidavits are admissible even if they are hearsay because they
are based on Plaintiffs' own testimony and are consistent with

prior testimony. Pls.' XMSJ, ECF No. 42 at 15-16. Plaintiffs
also put forth a Reply to the Defendants' Counter-Statement of
Material Facts, *see* RSMF, ECF No. 47, which contains alternate
citations to testimony in the record (in addition to the
affidavits), and argue that the Court should use the alternate
citations in the reply if it rejects the affidavits. *Id.* at 16.
Defendants move to strike Plaintiffs entire Reply to the
Defendants' Counter-Statement of Material Facts, ECF No. 47; the
Plaintiffs' respective affidavits, ECF No. 46-1; and Ms.
Aguilar's declaration regarding translation, ECF No. 46-2. *See*
Defs.' MTS, ECF No. 48 at 6. Defendants further challenge the
admissibility of Plaintiffs' handwritten time records, and of
Plaintiffs' reliance on their own answers to interrogatories to
support factual assertions. ECF No. 44-1 ¶ 2. The Court
considers each of the evidentiary challenges Defendants have
posed in turn.

### 1. Plaintiff's Affidavits Are Admissible

In their Motion to Strike, Defendants ask that the Court
strike Plaintiffs' Spanish affidavits, Ms. Aguilar's
declaration, and Plaintiffs' Reply to Defendants' Counter
Statement of Material Facts in Dispute. *See* Defs.' MTS, ECF No.
48 at 5. Defendants challenge the affidavits in a variety of
ways. Defendants contend that because Plaintiffs' declarations
appear for the first time in a Reply, they have had "no

opportunity to challenge the accuracy of the translations or the qualifications of the translator." Defs.' MTS, ECF No. 48 at 4. Plaintiffs also challenge Ms. Aguilar's competence as a translator, and thereby her declaration and the Plaintiffs' declarations. *Id.* at 6.  Defendants also directly challenge the contents of the affidavit, arguing that they are inadmissible because they implicate the sham-affidavit rule and conflict with prior testimony. *See* Defs.' Opp'n, ECF No. 44 at 25.[6] The Court addresses each of these three objections in turn.

### a. Defendants Have Had an Opportunity to Challenge the New Affidavits

Defendants argue that because the Declarations appear for the first time in a Reply, they have had no opportunity to challenge either the accuracy of the translations or the qualifications of the translator. *See* Defs.' MTS, ECF No. 48 at 4. They add that "where Plaintiffs made factual assertions that cited to the declarations in their statement of facts, Defendants responded based only on the information on hand at the time, which did not include these new declarations." *Id.* Defendants assert they have a right to respond to the new

---

[6] Defendants had previously objected to the affidavits based on a violation of Federal Rule of Evidence 604, arguing that they are inadmissible hearsay translations. *See* Defs.' Opp'n, ECF No. 44 at 23. However, Plaintiffs then submitted Spanish language translation along with a translator's declaration, and defendants did not renew this argument. *See generally* Defs.' MTS, ECF No. 48. The Court therefore finds this argument moot.

declarations and to supplement their Counter-Statement of Facts
to account for the evidence and new citations proffered by the
Plaintiffs. *Id.* at 5. They add that Plaintiffs have provided no
reason this new evidence was not produced with the initial
motion, and there is little reason to incorporate the new
evidence. *Id.* Plaintiffs respond that Defendants have failed to
articulate any prejudice they would suffer if the citations are
considered by the Court. *See* Pls.' Opp'n to Defs.' MTS, ECF No.
50 at 3. They state that the Spanish affidavits contain no new
information or facts from the English affidavits submitted in
the Plaintiffs' cross-motion. *Id.* They add that the RSMF does
not include any "new evidence" that was not included in the
Plaintiffs' Counter Statement of Disputed Facts, *see* ECF No. 48
at 3-4; and that Defendants do not identify any new evidence or
the prejudice it would lead to. The Court is persuaded by
Plaintiffs' argument.

Where a party has an opportunity to respond to evidence
that may otherwise be objectionable, or does in fact respond,
there is no prejudice to that party and striking such evidence
is not proper. *See Phillips v. Mabus*, 319 F.R.D. 36, 38 (D.D.C.
2016) (declining to exercise authority to strike late filed
summary judgment motions because there was no prejudice to the
Defendants because they would have an opportunity to respond to
respond to late filed briefs); *Campbell v. Natl. R.R. Passenger*

*Corp.*, 311 F. Supp. 3d 281, 318 (D.D.C. 2018) (denying motion to strike part of reply brief where new arguments were sufficiently addressed in the motion to strike itself); *Parker v. D.C.*, Civ. Act. No. 05-0188(RWR), 2006 WL 1442383, at *2 (D.D.C. May 22, 2006) (denying motion to strike untimely reply brief because there was no prejudice to other party). In the present case, Defendants have had an opportunity to respond, and indeed, have responded, in both their joint reply and opposition brief, *see* ECF No. 44; and their motion to strike, *see* ECF No. 48. It is disingenuous for the Defendants to argue that they have had "no opportunity to challenge the accuracy of the translations or the qualifications of the translator," while proceeding to do exactly that in their motion to strike. Defendants' challenges to the translator, and to the mode of translation, have been sufficiently addressed in the motion to strike itself. *See infra*; *cf. Campbell*, 311 F. Supp. 3d at 318. Defendants have also challenged the contents of the new affidavits. *See* Defs.' Opp'n, ECF No. 44 at 25.

Nor does the Court see a need for Defendants to either strike Plaintiffs' RSMF or to permit Defendants to supplement their Counter-Statement of Facts for purposes of summary judgment. The Defendants have already included citations to the affidavits in their Counter-Statement. *See* DSMF, ECF No. 44-1 ¶ 38. Defendants do not suggest that there are any new details

presented in the Spanish language versions of the affidavits, attached to Plaintiff's reply, *see* ECF No. 46-1; that would require additional citations. As to Plaintiffs' new citations in their Reply to Defendants' Counter-Statement, *see* ECF No. 47; these citations are not to new evidence but to the existing summary judgment record in case the Court rejected the affidavits. The Plaintiffs had included citations for the affidavits in their Statement of Material Facts Not in Dispute, *see* ECF No. 44-28; which pre-dated the reply, *see* ECF No. 47. Plaintiffs Reply to Defendants' Counter-Statement, *see* ECF No. 47; supplements the affidavit citations with the existing record in case the affidavits are rejected. As Plaintiffs point out, the Defendants' position on this point is particularly strange given that Defendants do the same thing they accuse the Plaintiffs of doing in their own reply. *See* ECF No. 44-2 at ¶¶ 8, 10, 12, 17, 22-29, 33, 36, 56, 63, 69, 75 (including new citations that were not in their original Statement of Material Facts not in Dispute). The Court concludes that Defendants had an opportunity to, and indeed did, challenge the affidavits, and that there is no need to strike the Plaintiffs' Reply to Defendants' Counter-Statement of Material Facts, ECF No. 47; on the basis of its additional citations.

### b. Ms. Aguilar's Declaration is Admissible

Defendants argue that the Court lacks sufficient evidence to conclude that Ms. Aguilar is a "competent translator," and therefore should not rely on her declarations or accept the Plaintiffs' affidavits. Defs.' MTS, ECF No. 48 at 6. The Defendants add that Ms. Aguilar did not act as a translator in the traditional sense because Google Translate was used to provide the translation while Ms. Aguilar merely interpreted the language for Plaintiffs. *Id.* Plaintiffs respond that Defendants fail to point to any inaccuracies or inconsistencies in the two translations and are free to submit them to the scrutiny of their own interpreter. *See* Pls.' Opp'n to Defs.' MTS, ECF No. 50 at 9. Plaintiffs also state that the affidavits are not clearly inconsistent with prior testimony. *See* Pls.' XMSJ, ECF No. 42 at 16. The Court concludes that Ms. Aguilar's declaration is admissible.

Persuasive authority holds that "[i]f the declarant himself does not speak and read English the party relying on his English-language declaration must also submit documents sufficient to establish that he understood what he was signing." *Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 698, 709 (S.D.N.Y. 2016). Moreover, Federal Rule of Evidence 604 requires that "[a]n interpreter must be qualified and must give an oath or affirmation to make a true translation." *Jack v. Trans World*

*Airlines, Inc.*, 854 F.Supp. 654, 659 n.4 (N.D. Cal. 1994)
(striking affidavits from a summary judgment briefing and
holding that "[w]itness testimony translated from a foreign
language must be properly authenticated and any interpretation
must be shown to be an accurate translation done by a competent
translator." (citing Fed. R. Evid. 604 and 901)). Here, Ms.
Aguilar is a native Spanish speaker, and has stated in her
affidavit that she regularly interprets during client meetings
at Plaintiffs' counsel's Firm, even though she is not a
certified translator. *See* Exhibit B, Aguilar Affidavit, ECF No.
46-2. Plaintiffs have therefore shown she is qualified and have
submitted her affirmation of translation. *See Trans World
Airlines*, 854 F.Supp. at 659 n.4. The Defendants provide no
legal authority suggesting that the Court needs to be aware of
her education, and have more specifics of her background, to
find her a "competent translator." Defs.' MTS, ECF No. 48 at 6.
Nor do Defendants present any case law from within this District
that would prevent Ms. Aguilar's affidavit from satisfying
Federal Rule of Evidence 604. *See generally id.*

It is true that other courts have been hesitant of the
reliability of Google Translate. *See, e.g.*, *Novelty Textile,
Inc. v. Windsor Fashions, Inc.*, 2013 WL 1164065 at *3 (C.D.
Cal., Mar. 20, 2013) ("The court notes, first, that a
translation by Google Translate is not sufficiently reliable to

make it admissible."). However, those cases are not applicable here since Ms. Aguilar affirms that she reviewed the English and Spanish versions of the affidavits to make sure the Google translation was accurate and read the Spanish affidavits to Plaintiffs before they were signed. *See* Exhibit B, Aff. Of Ms. Aguilar, ECF No. 46-2. The Court therefore concludes that Ms. Aguilar's affidavit should not be struck from the record. The Court cannot find that Plaintiffs' affidavits are inadmissible simply by virtue of being interpreted by Ms. Aguilar.

### c. The Affidavits Do Not Violate the Sham Affidavit Rule

The Court turns next to Defendants' direct objections to Plaintiffs' affidavits. The Court addresses each of the alleged inconsistencies between the affidavits and prior testimony, which the defendants argue violate the sham affidavit rule. This rule states that a deponent cannot file a "contradictory post-deposition affidavit in an attempt to fabricate a material issue of fact and thus preclude the granting of summary judgment." *Jackson v. Teamsters Local Union*, 922, 310 F.R.D. 179, 181 (D.D.C. 2015) (citing *Pyramid Securities Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991) ("Where a party emphatically and wittingly swears to a fact, it bears a heavy burden-even in the summary judgment context-when it seeks to jettison its sworn statement.")). For the doctrine to apply, "the affidavit must clearly contradict prior sworn testimony,

rather than clarify confusing or ambiguous testimony, and the contradiction must lack credible explanation, such as new evidence." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 573 F. Supp. 2d 152, 160-61 (D.D.C. 2008) (quoting *Hinch v. Lucy Webb Hayes Nat'l Training Sch.*, 814 A.2d 926, 930 (D.C. 2003)). It is insufficient that a subsequent affidavit elucidates on some "forgotten" fact; the contradiction must be direct and clear. *See Barrett v. Chreky*, 634 F. Supp. 2d 33, 37 (D.D.C. 2009).

Defendants first claim that Plaintiff Andrade's affidavit testimony about his hourly rate being $13, which he states was later raised to $14, contradicts his deposition testimony that the rate was $13 throughout. Defs.' Opp'n, ECF No. 44 at 26-27. However, as Plaintiffs point out, in deposition, Defendants questioned Mr. Andrade about his meeting with Mr. Silveira when he was first hired and asked if he was promised any specific amount of money at this meeting, to which Mr. Andrade testified to $13 per hour. *See* Transcript of Jose A. Andrade Romero ("Andrade Dep."), ECF No. 44-4 at 22-23. This is entirely consistent with Mr. Andrade's former testimony as to his starting wage. Defendants counsel never asked Mr. Andrade if his hourly rate changed from $13.00. *See id*. Therefore, the sham affidavit rule is not implicated. *See St. Paul*, 573 F. Supp. 2d at 160-61; *see also Barrett,* 634 F. Supp. 2d at 37 (finding no

violation of the sham-affidavit rule because the plaintiff did not "directly contradict herself" in her supplemental affidavit). Defendants next argue that Mr. Andrade's deposition testimony that he received "about five" payments from Mr. Silviera contradicts his hand-written notes that he received only two payments: one of $2,100 from Mr. Zapata and one of $6,200 from Mr. Cornego, for a total of $8,300. Defs.' Opp'n, ECF No. 44 at 27. The question for the Court, however, is not whether Mr. Andrade's deposition testimony contradicts his hand-written notes, but instead whether his affidavit contradicts his prior deposition testimony. Mr. Andrade's deposition testimony was that he was paid a total of $8,300, and that he received individual payments on five separate occasions but could not recall the precise dates or amount of each payment. ECF No. 42-10 at 33-36, 56-60. Mr. Andrade's affidavit similarly states that he was paid $ 8,300. *See* Andrade Affidavit, ECF No. 42-19 ¶ 2. There is thus no inconsistency between Mr. Andrade's affidavit and his deposition testimony as to the payments he received.[7]

---

[7] As to the alleged discrepancy between the deposition testimony and the notebook, the Court is cognizant that Mr. Andrade never testified that he was paid on just two occasions. *See* Andrade Dep., ECF No. 44-4 at 58. Admittedly, Mr. Andrade's notation in his handbook suggests he used two inputs to arrive at the total amount he was paid, i.e., $8,300, *see* ECF No. 42-22 at 20; and the Court agrees with Defendants that it is unclear how these

Next, Defendants turn to Mr. Marroquin, and claim that his "damage calculations are in direct conflict with his testimony," because he "repeatedly changed the amount he believed he was owed, originally stating that he was owed just $8,000, but later changing it to $10,000." Defs.' Opp'n, ECF No. 44 at 28. Defendants do not explain whether they mean the damage calculations in Mr. Marroquon's affidavit, or refer to the affidavit at all, but the Court gives them the benefit of the doubt and assumes they mean the $10,355.50 in unpaid wages Mr. Marroquin references in his affidavit. *See* Marroquin Affidavit, ECF No. 42-20 ¶ 4. By Defendant's own admission, Mr. Marroquin stated he was owed $10,000 in his deposition. Other than providing a more precise figure, the Court is unable to see how the $10,355.50 mentioned in the affidavit is at all inconsistent with the $10,000 in the deposition. The Court concludes there is no "direct and clear" contradiction. *See* Barrett, 634 F. Supp. 2d at 37.[8]

---

two numbers align with the five payments Mr. Andrade states he received, and whose amounts he cannot recall. *See* Andrade Dep., ECF No. 44-4 at 57-60. However, the Court cannot assume that this handbook notation means those two inputs represent just two payments instead of an amalgamation of payments for specific job sites, for instance. The Court also observes that, contrary to Defendants' assertion, *see* Defs.' Opp'n, ECF No. 44 at 27; the notebook does not establish that Mr. Andrade was paid the listed amounts *by* Mr. Zapata and Mr. Cornego. *See* ECF No. 42-22 at 20.

[8] Defendants further argue that Mr. Marroquin contradicted himself when he testified about his damages in deposition

Defendants also point to an inconsistency between the $14 hourly rate used in the affidavit and mentioned in Mr. Marroquin's deposition, in contrast to the $13 hourly rate mentioned in Plaintiffs' statement of undisputed facts. *Compare* Marroquin Dep., ECF No. 44-3 at 28 with Plaintiffs' Statement of Material Facts ("PSMF"), ECF No. 42-28, ¶ 45. Plaintiffs explain this inconsistency as reflecting an error in the Plaintiff's Statement of Undisputed Facts, with the correct number being $14 per hour. *See* Pls.' XMSJ, ECF No. 42 at 18. As defendants point out, this in turn creates a conflict with Mr. Silveira's testimony that Mr. Marroquin's hourly rate was $13. *See* Defs.' Opp'n, ECF No. 44 at 28. Relevant here, regardless of the error, there is no inconsistency between the affidavit and the deposition that would lead to the affidavit being inadmissible.

Finally, defendants take issue with Mr. Marroquin's damage calculations, which they argue are inadmissible hearsay because they rely exclusively on his own declaration and hand-written notes to support his number of hours worked. *See* Defs.' Opp'n,

---

because he could not provide details about how his damages were calculated, nor provide a "clear basis" for how he calculated how much he was paid by defendants. This argument has nothing to do with a contradiction between the affidavit and deposition testimony and is therefore not addressed here. The Court is cognizant, however, that the *Mt. Clemens* burden shifting standard applies, as discussed *infra*, since the employers did not record employee hours or payments.

ECF No. 44 at 29. Again, defendants provide no citation, but the Court assumes they mean the damage calculations referred to in Mr. Marroquin's affidavit, *see* Marroquin Affidavit, ECF No. 42-20 ¶ 4; and attached to the Plaintiff's Cross-Motion, *see id.* at 3-7. The Court has already addressed the issue of whether these documents are inadmissible hearsay because they are improperly translated and authenticated. *See supra.* The Court focuses here on the narrower allegation that Mr. Marroquin is using his declaration to "correct" his previous testimony by providing new details changing the amount he claimed he was paid. *See* Defs.' Opp'n, ECF No. 44 at 29. Confusingly, no citation is provided as to the new details, and Defendants then state that the hand-written notes referred to in the declaration *lack* sufficient detail because they do not list any actual times worked and only include the total hours worked each day rounded to whole numbers. *Id.* The Court's best interpretation of Defendants' argument on the narrow issue under consideration is that Defendants contend Plaintiffs cannot introduce new details as to the amount paid through the declaration. As the Court has discussed already, Mr. Marroquin testified he was owed $10,000, and his declaration states he is owed $10,355.50, a remarkably similar number. *See* Marroquin Affidavit, ECF No. 42-20 ¶ 4; Marroquin Dep., ECF No. 44-3 at 122. Both the calculations used in Mr. Marroquin's affidavit and Mr. Marroquin's deposition

testimony establish a $14 hourly wage. *See* Marroquin Affidavit, ECF No. 42-20 ¶ 4; Marroquin Dep., ECF No. 44-3 at 28. The only correction Mr. Marroquin makes in his declaration is when he states he was "mistaken when [he] testified in [his] deposition that [he] wrote down how much [he] was paid in [his] notebook." Marroquin Affidavit, ECF No. 42-20 ¶ 9. This is undoubtedly a reversal of his testimony that he noted down "the hours and how much money" he was paid. Marroquin Dep., ECF No. 44-3 at 58-59. The only explanation offered by the Plaintiffs is that Mr. Marroquin was "mistaken" and "only wrote down the hours and days [he] worked for the Defendants." Marroquin Aff., ECF No. 42-20 ¶ 9. The Court does not find this to be a credible explanation. *See St. Paul*, 573 F. Supp. 2d at 160-61.

Since Defendants have identified no contradictions in Mr. Andrade's affidavit, or in the remainder of Mr. Marroquin's, the Court finds the two affidavits to be admissible, and orders Plaintiffs to file an amended affidavit for Mr. Marroquin excluding the one paragraph correcting his testimony. The Court accordingly does not reach Plaintiffs' argument that it should consider equivalent testimony or evidence already in the record in place of the affidavits. *See* Pls.' XMSJ, ECF No. 42 at 16.

## 2. The Admissibility of Mr. Marroquin's Hand-Written Notes is a Question for Trial

Defendants argue that Mr. Marroquin's hand-written notes, which he relies on in his damage calculations, lack sufficient detail and are inadmissible hearsay. *See* Defs.' Opp'n, ECF No. 44 at 29. Defendants take issue with the fact that Mr. Marroquin's notes do not list actual times worked and only include the total hours worked each day. *Id.* Defendants also object to the hours being rounded to whole numbers instead of fractions, and state that Plaintiffs provide no explanation for this pattern. *Id.* The Plaintiffs respond by providing several theories under which the notes could be admitted at trial. *See* Pls.' Reply, ECF No. 46 at 19. At the outset, the Court notes that because RBS, as the employer, failed to keep proper records of employees' hours worked, a burden shifting scheme applies and the fact that the Mr. Marroquin's evidence is merely an approximation is not a bar to recovery. *See Mt. Clemens,* 382 U.S. at 687, 66 S.Ct 1187. Consequently, it is not significant that Mr. Marroquin's records do not list actual times worked and are rounded instead of in fractions. The Court is also cognizant that Mr. Marroquin's damages are not exclusively based on the hand-written records. As Mr. Marroquin states in his affidavit, the damages are also based on his deposition testimony. *see* Marroquin Affidavit, ECF No. 42-20 ¶ 4. The

notes therefore do not impact the damage calculations or Mr.
Marroquin's affidavit, and the Court need not reach the
question of whether the notes are hearsay at summary judgment.

### 3. Defendants Have Not Presented a Valid Challenge to the Admissibility of Plaintiffs' Interrogatory Answers

Defendants also challenge Plaintiffs' repeated reliance and
citation to their own answers to interrogatories to support
their response to Defendants' factual assertions. *See* DSMF, ECF
No. 44-1 at 1-2. Plaintiffs respond that although the answers
are hearsay, they are admissible hearsay. Pls.' Reply, ECF No.
46 at 20. The Court finds that it need not reach this issue
because Defendants have not presented a valid argument. Federal
Rule 56(e) enumerates "answers to interrogatories" as one of the
forms of evidence that a party may rely on to supports its
position on summary judgment. *See* Fed. R. Civ. P. 56(e). A party
may offer its own answers to interrogatories in opposition to a
motion for summary judgment if: (1) the answers are based on
personal knowledge of the person supplying the answers; (2) set
forth facts that would be admissible in evidence; and (3)
demonstrate that the person supplying the answers is competent.
*Brand v. Westall*, CIV. A. 94-0312 DAR, 1995 WL 235579, at *4
(D.D.C. 1995) (declining to consider interrogatory answers
because they were "nothing more than a recitation of theories
and conclusions" and not based on personal knowledge).

Defendants, citing to cases from other districts, state that "[a]nswers to interrogatories cannot be relied upon to support factual positions on summary judgment, as Courts have held that a party's own answers to interrogatories are inadmissible hearsay." DSMF, ECF No. 44-1 at 2. However, Defendants then go on to acknowledge that in this District, courts have held that a party's own answers to interrogatories *are* admissible so long as they "conform to the strict requirements of Rule 56(c)(4) applied to affidavits and declarations in support of a motion." *Id.* (citing *Houston v. Sectek, Inc.*, No. CIV.A.04-2218, 2008 WL 2599832, at *1 (D.D.C. June 30, 2008)). As Plaintiffs emphasize, Defendants fail to state which of the three foregoing requirements to admissibility the Plaintiffs' sworn answers violate. Nor do Defendants offer any legal authority within this district for their assertion that Plaintiffs need to identify a hearsay exception. *See generally* DSMF, ECF No. 44-1 at 2. The Court therefore finds that Defendants have failed to pose a valid challenge to Plaintiffs' citation of their interrogatory answers.[9]

---

[9] The Court also recognizes that Defendants' interrogatory answers are based on their personal knowledge and contain no qualifier suggesting a lack of knowledge that would make them inadmissible. *See Houston*, 2008 WL 2599832, at *1.

Having resolved all the evidentiary challenges posed by
Defendants, the Court turns to Defendants' other arguments in
favor of their motion for summary judgment.

### B. Ms. Lima is Plaintiffs' Employer

Defendants argue that Ms. Lima is not an employer under the
FLSA, since she did not hire Plaintiffs, direct their work, or
pay them for it. *See* Defs.' MSJ, ECF No. 38 at 19. They suggest
that Plaintiffs are "hung up on [Ms.] Lima's position and title,
focusing on her status as an officer, owner, incorporator and
director instead of what she was actually doing." Defs.' Opp'n,
ECF No. 44 at 17. They contend that Ms. Lima was "essentially
[Mr.] Silveira's assistant on the occasion when he required her
assistance," and would "perform tasks as instructed by Silveira,
including writing checks, typing up documents, and sending out
bills and invoices." *Id.* at 18. Plaintiffs respond that Ms. Lima
is an employer under the FLSA because she "helped form RBS
Corporation, serves as an Officer (the Vice President), and is
an owner, incorporator and director of RBS Construction
Corporation, Inc." Pls.' XMSJ, ECF No. 42 at 36; *see also* DSMF,
ECF No. 44-1 ¶¶ 1-2. They add that Ms. Lima was involved in the
day-to-day affairs of RBS and controlled corporate funds,
because she: (1) communicated with Plaintiffs' foremen about
Plaintiffs' hours, *see* Silveira Dep., ECF No. 42-2 at 73-75;
Marroquin Dep., ECF No. 44-3 at 148, 163; (2) prepared and gave

Plaintiff Andrade a 1099 Form for 2016, *see* Andrade Dep., ECF
No. 44-4 at 72-75; (3) on at least one occasion, instructed
Plaintiff Andrade in the performance of his work on a job site,
*see id.* at 111; (4) spent corporate funds and used them to pay
personal expenses that she did not reimburse the corporation
for, *see* Silveira Dep., ECF No. 42-2 at 206-13;  Exhibit L, ECF
No. 42-13; Exhibit O, ECF No. 42-16; (5) wrote checks used to
pay Plaintiffs and other workers of RBS Construction Corp., *see*
Exhibit L, ECF No. 42-13 at 5, 12, 22; Exhibit N, ECF No. 42-15;
and (6) was aware that at least one Plaintiff (Mr. Andrade) was
owed money for work he had done, *see* Andrade Dep., ECF No. 44-4
at 108-09. Based on the record herein, the Court finds that Ms.
Lima is an employer.

This District uses a four-part test to determine whether an
individual is an employer under the FLSA, asking whether the
putative employer: (1) has hiring and firing authority; (2)
supervises and schedules employee work hours or conditions of
employment; (3) determines the rate and method of payment; and
(4) maintains employment records." *Saint-Jean*, 815 F. Supp. 2d
at 4 (citing *Morrison*, 253 F.3d at 11). "No one factor standing
alone is dispositive." *Morrison*, 253 F.3d at 11. Corporate
officers and owners are individually liable when they engage in
a certain level of operational control. *See Wilson*, 126 F. Supp.
3d at 6. "To determine whether a corporate officer has

operational control, the [c]ourt looks at the factors [of the economic reality test] plus the ownership interest of the corporate officer." *Orellana*, 332 F. Supp. 3d at 263. In other districts, financial control over a corporation has also been deemed a significant factor in determining whether an individual meets the statutory definition of an employer. *See, e.g.*, *Manning*, 725 F.3d at 48.

Here, applying the economic reality test, the record reflects that Ms. Lima supervised employee work hours, determined the method of payment, and maintained employment records. *See Orellana*, 332 F. Supp. 3d at 263. As Plaintiffs point out, Ms. Lima was involved in the day-to-day affairs of RBS Construction Corp. and RBS Group Inc. Defendants themselves concede she communicated with Plaintiff Marroquin's supervisor about the hours he worked, DSMF, ECF No. 44-1 ¶ 35; sent out bills, *id.* ¶ 39; paid vendors and employees, *id*. ¶ 24; and on one occasion showed up on a job site and instructed Plaintiff Andrade in the performance of his work, *id*. ¶ 42. The "economic reality" cannot be reconciled with Defendants' contention that Ms. Lima's role was "marginal, at best." Defs.' Opp'n, ECF No. 44 at 18.

Defendants assert that Ms. Lima's involvement is explained by her acting on Mr. Silveira's direction on every occasion, and as his "transcriber and assistant." Defs.' Opp'n, ECF No. 44 at

18. This argument would be more persuasive if Ms. Lima was not herself an owner of RBS Construction Corp. and RBS Group, with the official title of Vice President. *See* DSMF, ECF No. 44-1 ¶¶ 1-12.  Defendants essentially argue that because Ms. Lima allegedly wrote checks and performed tasks at her husband's direction, the Court should overlook her status as owner, her access to and use of corporate funds for personal and business reasons, and her involvement with the business. This argument is unsustainable. Ms. Lima's "ownership interest in [RBS], while not dispositive of employer status under FLSA, certainly raises a plausible inference that [she] possessed the requisite operational control over the covered entity." *Wilson*, 126 F. Supp. 3d at 7-8 (internal quotation marks omitted). Combined with her day-to-day involvement and use of corporate funds, the record establishes her status as an employer. It is possible Ms. Lima performed tasks at her husband's direction, but that does not change her status vis-à-vis the employees of RBS.

Defendants cite to several cases regarding whether spouses of business owners are employers for purposes of FLSA. However, these cases are easily distinguished. In *Morataya*, the spouse was hired by her husband's company as an administrative assistant and did not have an ownership interest in the business, unlike the present case. *See Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, No. GJH-I3-0I888, 2015 WL

40

165305, at *2 (D. Md. Jan. 12, 2015). Similarly, in *Marroquin*, the spouse in question had no ownership interest, had never been to any of the company's work sites, and had done nothing other than write paychecks and wire money to her husband and son while they were elsewhere. *Marroquin v. Canales*, 505 F. Supp. 2d 283, 298 (D. Md. 2007). The Court concludes that Ms. Lima is an employer for purposes of the FLSA.

### C. Mr. Andrade Is Covered Under FLSA, While Mr. Marroquin's Coverage Is a Question for The Jury

#### 1. Enterprise Coverage

The FLSA defines "an enterprise engaged in commerce or in the production of goods for commerce" as one that "has employees engaged in commerce" and "whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)–(ii). Defendants argue that "[b]ecause the Plaintiffs cannot demonstrate that a genuine dispute of material fact exists with respect to Defendants' having gross sales of $500,000.00 or more in 2016 and 2017, Plaintiffs cannot establish an element of their overtime claim against Defendants and summary judgment may be properly granted." Defs.' MSJ, ECF No. 38 at 17.

Plaintiffs concede that they "cannot prove at this time that Defendants exceeded the $500,000.00 threshold, given Defendants' shoddy and fraudulent bookkeeping practices as well

as their failure to file tax returns during the years in question." Pls.' XMSJ, ECF No. 42 at 30. The Court therefore grants summary judgment in favor of the Defendants. *See Hopkins v. Women's Div., Gen. Bd. Of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

### 2. Individual Coverage

#### a. The Court Cannot Grant Summary Judgment on Whether Plaintiff Marroquin is Individually Covered Under the FLSA

For individual coverage to apply under the FLSA, the Plaintiffs must provide evidence that they were "(1) engaged in commerce or (2) engaged in the production of goods for commerce." *Thorne v. All Restoration Services, Inc., et al.*, 448 F.3d 1264, 1266 (11th Cir. 2006). "[F]or an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g.,

regular and recurrent use of interstate telephone, telegraph, mails or travel." *Id.*[10]

The FLSA's implementing regulations recognize that regular travel across state lines by an employee establishes individual commerce coverage under the FLSA. *See* 29 C.F.R. § 776.12. An employee working on a "traveling construction crew[]" may be subject to individual coverage by virtue of his interstate movement. *Id.* There is no bright-line rule for what amount of interstate travel is sufficient to trigger the FLSA's individual coverage. Employees who are "regularly engaged in traveling across State lines in the performance of their duties (as distinguished from merely going to and from their homes or lodgings in commuting to a work place) are engaged in commerce and covered" but those who do so on "isolated or sporadic instances" are not covered. *Id.* "Doubtful questions arising in the area between the two extremes must be resolved on the basis of the facts in each individual case." *Id.*

Plaintiffs argue that Mr. Marroquin is covered by the FLSA because "at least three times a week, (with the exception of his final week of work when he worked in Maryland) [Mr.] Marroquin

---

[10] Plaintiffs raise only one ground for concluding that they are covered by the FLSA: they allege that they were "engaged in commerce" while working for Defendants because they regularly engaged in interstate travel. *See* Pls.' XMSJ, ECF No. 42 at 32, 34.

started his work day in Maryland and then crossed state lines into Washington D.C. to continue working." Pls.' XMSJ, ECF No. 42 at 33. Specifically, Plaintiffs emphasize Mr. Marroquin's testimony that he would go with his foreman to pick up construction materials "just about daily," and "about three times a week they would specifically do so from the Home Depot in Hyattsville, Maryland" before driving to a construction site in D.C. *Id.*; Marroquin Dep., ECF No. 44-3 at 37-43.

Defendants respond that Mr. Marroquin "cannot establish that this activity represented a substantial part of his work, and accordingly, [Mr.] Marroquin cannot establish that he was "engaged in commerce." Defs.' Opp'n, ECF No. 44 at 7. First, Defendants state that regardless of whether Mr. Marroquin's time in Home Depot was compensable, he has not shown that the purchases placed him in the "channels of commerce." *See id.* at 8-9. Second, they assert that Mr. Marroquin has not produced any evidence that he actually went to Home Depot in Hyattsville three times a week, and that the record only establishes he went twice over the course of his employment. The Court finds that a genuine issue of material fact exists on this issue and declines to grant summary judgment to Defendants.

As a threshold matter, Plaintiffs are not required to show that their work was "an essential part of the stream of interstate commerce," or how, without their work, interstate

commerce would be "impeded, impaired, or abated." Defs.' MSJ, ECF No. 38 at 8-9. The relevant Regulations plainly state that the FLSA's individual coverage "applies to employees [working in construction] who regularly travel across state lines in the performance of their duties, even though the construction project itself is not covered." 29 C.F.R. § 776.24. Plaintiffs therefore need only show that they regularly traveled across state lines for work.

Because how often Mr. Marroquin went to Maryland to pick up material is a disputed material fact, the Court is unable to establish whether he "regularly engaged in commerce" across state lines and is covered by the FLSA. 29 C.F.R. § 776.12. Plaintiffs contend that Mr. Marroquin, per his own testimony, picked up materials with his foreman Luis "just about daily" and that three times a week they went to Home Depot in Hyattsville, Maryland. Pls.' Reply, ECF No. 46 at 6; Marroquin Dep., ECF No. 44-3 at 37-43. Although such testimony, standing alone, may be considered a self-serving statement which does not give rise to a triable issue of fact, see Toomer v. Mattis, 266 F. Supp. 2d 184, 200 (D.D.C. 2017); Plaintiffs also offer support in the form of Defendants' bank account records to show the regularity with which Defendants purchased material at the Home Depot in Maryland. See Pls.' XMSJ, ECF No. 42 at 32-33; Exhibit Q, ECF No. 42-18.

45

Admittedly, as Defendants point out, "[f]rom late July 2016 to mid-October 2016, the bank statements reveal that Defendants purchased goods from the Home Depot located in Hyattsville, MD on a total of two dates during the time that [Mr.] Marroquin worked for the Defendants." Defs.' Opp'n, ECF No. 44 at 44. But the bank statements are just one piece of evidence that Plaintiffs use to support Mr. Marroquin's testimony; Plaintiffs also emphasize Ms. Lima's own testimony that she used her personal card to pay for purchases at Home Depot. *See* Exhibit A, ECF No. 42-2 at 62-66. Lacking access to Ms. Lima's card records, which she failed to keep despite using the card for business transactions, the Plaintiffs cannot establish exactly how many times Ms. Lima paid for purchases.[11] *See id.* Nonetheless, taking Ms. Lima's testimony alongside the bank records and Mr. Marroquin's testimony, the Court is persuaded that there is a genuine dispute of fact. "Because the frequency of travel is critical to establishing coverage, this dispute is

---

[11] Ms. Lima's deposition testimony is contradictory and vague. She first states that she "let [Plaintiffs] use [her] credit card, because [her] husband did not have any credit cards. *See* Exhibit A, ECF No. 42-2 at 65:11-16. She adds that she used either a Bank of America or Capital One credit card but goes on to deny having either of those credit cards in 2016 or 2017. *See id.* at 65-67. She then asserts that she actually paid with a debit card and goes back and forth on whether it was a Bank of America card or not, before stating that she does not remember. *See id.* at 67-68. She concludes by saying that she did not keep any records of the card charges. *Id.* at 68:14.

material." *Benton,* 210 F. Supp. 3d at 110. Moreover, whether Mr. Marroquin can substantiate his factual claim depends on assessing his credibility, which is within the province of the jury. *See id.*

Accordingly, the Court declines to grant summary judgment on the issue of whether Mr. Marroquin is covered by the FLSA.

### b. Mr. Andrade Is Individually Covered Under the FLSA

Plaintiffs state that Mr. Andrade's interstate travel involved traveling between job sites in Maryland and D.C. in a single workday and traveling from D.C. to Maryland to pick up equipment and then returning to D.C. to perform work. Pls.' XMSJ, ECF No. 42 at 35. Plaintiffs contend that Mr. Andrade is individually covered because he undertook interstate travel on average "every 34 days," which "at the least creates a dispute of material fact as to whether Andrade is individually covered." *Id.* at 35-36. The Plaintiffs highlight that "[Mr.] Andrade's monthly crossing of state lines in the performance of his duties is certainly more frequent than the 15 instances over the course of 36 months (or once every 2.4 months) that the court in the *Solano* case concluded would be a 'close call' when denying summary judgment for the Defendant on the issue of FLSA coverage." *Id.* at 36 (citing *Solano v. A Navas Party Prod., Inc.,* 728 F. Supp. 2d 1334, 1346 (S.D. Fla. 2010)).

Defendants do not dispute the number of times Mr. Andrade travelled inter-state but respond that Mr. Andrade's travel was "well shy of the bi-monthly standard articulated in *Benton* as approaching the limits of the FLSA's individual coverage reach." Defs.' Opp'n, ECF No. 44 at 12 (citing *Benton,* 210 F. Supp. 3d at 106-107 ([B]i-monthly travel approaches the limits of coverage, and more infrequent travel amounting to only sporadic trips each year are insufficient.")). The Court concludes that Mr. Andrade is individually covered.

As a threshold matter, the Court interprets the "bi-monthly" standard articulated in *Benton* to mean once every two months. *Benton* states that "[t]he cases that do exist suggest that weekly or bi-weekly travel is almost certainly sufficient to establish individual coverage, while bi-monthly travel approaches the limits of coverage, and more infrequent travel amounting to only sporadic trips each year are insufficient." *Benton*, 210 F. Supp. 3d at 107. The gradation in the text, from most often ("weekly"), to least often ("sporadic trips each year"), suggests that bi-weekly and bi-monthly are used to mean once every two weeks and once every two months respectively, rather than twice a week and twice a month. Moreover, the case cited in support directly thereafter concludes that plaintiff employees of an elderly care facility who traveled out of state with facility residents weekly, or two to four times per month,

48

established individual coverage to survive summary judgment.
*See Benton*, 210 F. Supp. 3d at 107 (citing *Bowrin v. Catholic
Guardian Soc'y* , 417 F. Supp. 2d 449, 468-71 (S.D.N.Y.2006)).
"[T]wo to four times per month" amounts to weekly to bi-weekly,
and *Benton* describes bi-weekly as "almost certainly sufficient
to establish individual coverage." *Id.* Another case cited by
*Benton* and by Plaintiffs concluded that "two [interstate] trips
in thirty-six months would be 'isolated or sporadic,' and
Plaintiff would not qualify for individual coverage," but it
would be a "closer call if Plaintiff can prove he traveled at
least fifteen times in connection with his employment." *Id.*
(citing *Solano v. A. Navas Party Prod., Inc.*, 728 F. Supp. 2d
1334, 1346 (S.D. Fla. 2010)). Fifteen times over thirty-six
months is almost bi-monthly in the sense of once per two months,
which *Benton* describes as approaching the limits of coverage.
*Id.*

The standard articulated in *Benton,* to which the defendants
themselves refer the Court, *see* Defs.' Opp'n, ECF No. 44 at 12;
makes clear that bi-monthly travel is approaching *the limits* of
coverage, but that it does not exceed them, *see Benton*, 210 F.
Supp. 3d at 107 (emphasis added). Further persuasive authority
comes from *Solano*, which describes travel fifteen times over
thirty-six months as "a closer call." *Solano*, 728 F. Supp. 2d at
1346. Fifteen times over thirty-six months is less frequent than

bi-monthly, and far less frequent than Plaintiff Andrade's six trips over seven months, or average of one occasion of interstate travel every thirty-four days. The Court concludes that Mr. Andrade is entitled to FLSA coverage. [12]

### D. The Question of Whether Plaintiffs Have Provided a Just and Reasonable Inference for Damages Is Inappropriate for Summary Judgment

Defendants argue that Plaintiff's testimony regarding damages is "incomprehensible, inconsistent, and rife with contradictions," and offers no basis "for the Jury to enter a judgment in their respective favor by a 'just and reasonable' inference." Defs.' MSJ, ECF No. 38 at 22. Defendants point out that Plaintiff Marroquin cannot identify the payments he received, but that he admits he received $200 to $300 "a lot of times" from Defendant Silveira. *Id*. They add that because Mr. Marroquin cannot testify as to what he was paid, he cannot testify to what he is owed. *Id.* at 22-23. Defendants also highlight shortcomings in Mr. Andrade's testimony, including the fact that he admitted destroying a record of payments he received from Mr. Silveira. *See* Andrade Dep., ECF No. 44-4 at 55, 58. Defendants emphasize that Mr. Andrade cannot testify to how he added up the amount he claims he was paid, *id.* at 34-38;

---

[12] The Court therefore need not reach Plaintiff's arguments that (1) it should exercise pendent jurisdiction over his D.C. law claims; and (2) it should exercise supplemental jurisdiction over the state law claims. *See* Pls.' XMSJ, ECF No. 42 at 36-37.

cannot recall the how often he was paid, *id.* at 55, 58; has
testified that he is owed anywhere from $2,500 to $20,000, *id.*
at 63, 67-69; and admits that he is guessing, *id.* at 68.

Plaintiffs respond that Defendants have misrepresented
Plaintiffs' deposition testimony and have not presented any
evidence that shows the Plaintiffs did not work the hours they
claimed or were paid more than they claimed. Pls.' XMSJ, ECF No.
42 at 26-27. Plaintiffs assert that they, in contrast, have
"presented evidence to allow a jury to determine their damages
as matter of just and reasonable inference," including (1) their
approximate damages, *see* SMF, ECF No. 42-28 ¶¶ 93, 97; the hours
they worked, *id.* ¶¶ 106, 108; what their rates of pay were *id.*
¶¶ 45, 106; and how much they were paid by Defendants, *id.* ¶¶
59, 60. Plaintiffs add that they produced in discovery
handwritten time records which contain precise information about
their damages, *see* Marroquin Wage Calculation, ECF No. 42-21 at
4-9; Romero Wage Calculation, ECF No. 42-22 at 7-16; and that
they have calculated their damages using these records. *See*
Marroquin Wage Calculation; ECF No. 42-21 at 1-3; Romero Wage
Calculation, ECF No. 42-22 at 1-6.

As a threshold matter, the Court is cognizant that a burden
shifting scheme applies. Where, as here, an employer's records
are incomplete or inaccurate, an employee need only "alleg[e]
that he performed work for which he was not properly

compensated and then 'produc[e] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference'" in order to make a *prima facie* case for overtime compensation. *Hunter,* 453 F. Supp. 2d at 52 (quoting *Mt. Clemens,* 328 U.S. at 687, 66 S.Ct. 1187). The employer must then present its own evidence as to the amount of work the employee actually performed or rebut the reasonableness of the inference from the employee's evidence. *Id.* at 58. The fact that the employee's evidence is merely an approximation is not a bar to recovery. *Mt. Clemens,* 382 U.S. at 688, 66 S.Ct 1187. Resolving disputes as to the hours of work actually performed or as to the reasonableness of the inference often "requires an assessment of credibility," which is beyond the scope of summary judgment. *Hunter,* 453 F. Supp. 2d at 53.

Here, Plaintiffs have made a *prima facie* case of compensation, since both Plaintiffs have testified to and / or provided records of the amount of hours worked per day, the number of days worked per week, the amount of wages paid, and their hourly rate. *See* Pls.' XMSJ, ECF No. 42 at 26-27; Marroquin Dep., ECF No. 44-3 at 66; Andrade Dep., ECF No. 44-4 at 18, 27-28; Marroquin Wage Calculation, ECF No. 42-21 at 6-11; Andrade Wage Calculation, ECF No. 42-22 at 11-20. The Court agrees with Plaintiffs that Defendants present no evidence that shows the amount of work that Plaintiffs actually performed.

Instead, Defendants focus "on trying to negate the reasonableness of the inference to be drawn from the employee's evidence." *Hunter*, 453 F. Supp. 2d at 44 (internal quotation marks omitted). Such an inference on reasonableness is inappropriate for summary judgment, and necessarily requires an assessment of credibility. *Hunter,* 453 F. Supp. 2d at 53.

The Court therefore declines to grant summary judgment on whether a just and reasonable inference on damages can be made.

## V.   Conclusion

For the foregoing reasons, the Defendants' Motion for Summary Judgement, ECF No. 38; is **GRANTED IN PART** and **DENIED IN PART**;[13] and Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 42; is **GRANTED IN PART** and **DENIED IN PART**;[14] and Defendants' Motion to Strike, ECF No. 48, is **GRANTED IN PART** and **DENIED IN PART**.[15] An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

        Signed:    **Emmet G. Sullivan**
                   **United States District Judge**
                   **February 22, 2022**

---

[13] Defendants are granted summary judgment on the lack of enterprise coverage under the FLSA for both Plaintiffs.

[14] Plaintiffs are granted summary judgment as to Ms. Lima's status as an employer, and as to Mr. Andrade's coverage under the FLSA. The Court also finds that Plaintiffs have made a *prima facie case* of violations under the FLSA, but the Court refrains from granting summary judgment on the reasonableness of Plaintiffs' claimed damages.

[15] Defendants' Motion to Strike, ECF No. 48, is denied except as to the Plaintiffs being ordered to submit a new affidavit for Mr. Marroquin that does not correct his deposition testimony. *See* ECF No. 42-20 ¶ 9.